Carol BANGURA, Appellant

v.

CITY OF PHILADELPHIA; Sylvester Johnson; Judith Dunne, Lieutenant, Badge No. 122 In Her Official Capacity; Beverly Pembrook, Sergeant, Badge No. 8636 In Her Official Capacity; Mark Brown, Detective, Badge No. 9270 In His Official Capacity; Charlotte Council, Deputy Commissioner Internal Affairs, In Her Official Capacity; Maurice Stovall, In His Official Capacity; Michael J. Horan, In His Official Capacity; Glenn Andreola, In His Official Capacity; Joseph McGill, In His Official Capacity; The School District of Philadelphia; Geraldine Myles, Dr., In Her Individual and Official Capacity; Dale Mathis, In Her Individual and Official Capacity; Marie Littman, In Her Individual and Official Capacity; Gail Borden Krause, In Her Individual and Official Capacity; Wendy Shapiro, In Her Individual and Official Capacity; Paul G. Vallas, In His Official Capacity; Stephen Masciantonio, In His Official Capacity; Leroy Witt, In His Official and Individual Capacity; Lynn Roman, In Her Individual and Official Capacity.

No. 08–2742.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) July 23, 2009.

Opinion filed: July 29, 2009.

Carol Bangura, Lanham, MD, pro se.

Jane L. Istvan, Esq., Matthew K. Hubbard, Esq., Elizabeth S. Mattioni, Esq., City of Philadelphia Law Department, Andrea B. Wapner, Esq., School District of Philadelphia, Office of General Counsel, Philadelphia, PA, for Appellees.

Before: Chief Judge SCIRICA, CHAGARES and WEIS, Circuit Judges.

## OPINION

PER CURIAM.

Carol Bangura, proceeding pro se, appeals from the District Court's order granting the defendants' motion for judgment on the pleadings. For the following reasons, we will affirm.

### I.

This appeal arises out of a child custody dispute between Carol Bangura and James Lewis, the unmarried parents of fourteen-year-old R.L. The following facts are taken from Bangura's complaint. On January 14, 2005, Philadelphia police officers arrested Bangura's minor daughter, R.L., for assaulting her. At that time, Bangura had primary physical and legal custody of R.L., while Lewis had custody every other weekend as well as extended periods during the summer. After the arresting officers took R.L. to the station, they assured Bangura that they would contact her when they were ready to release R.L. Despite these assurances, however, the police subsequently released R.L. to Lewis.

When Bangura contacted the station to object, one of the police officers in charge, Sergeant Beverly Pembrook, advised her to call 911 and report a violation of the custody order. Bangura followed these instructions, and called 911. Bangura then went to Lewis's home with a copy of the custody order, and waited for the police to arrive. Soon thereafter, Officers Quinn and Corrigan arrived on the scene. After speaking to Lewis, however, the officers informed Bangura that he refused to relinquish custody of R.L. because Bangura had physically and verbally abused her. Officer Quinn informed Bangura that Lewis was on his way to court in order to obtain a protection from abuse order. Bangura asked Officer Quinn to call the Department of Human Services ("DHS") to investigate these allegations, but the officer denied her request. Bangura then drove to the police station and met with Lieutenant Judith Dunne, who said that she was supporting her officers' actions.

Later that afternoon, Bangura returned to the police station and explained the situation to Detective Mark Brown. As a result, two officers were instructed to escort Bangura to Lewis's residence to retrieve R.L. Lewis, however, again refused to allow his daughter to leave with Bangura. The officers then advised Bangura to seek recourse in the courts.

Four days later, on January 18, 2005, Bangura, Lewis, and R.L. appeared in Juvenile Court for a hearing on the assault charges against R.L. At the hearing, intake worker Maurice Stovall told the parties that, due to the terms of the custody order, R.L. had to return home with Bangura. R.L. protested, however, and stated that she wanted to stay with her father. After conferring with Master Stephen

Masciantonio, Stovall permitted R.L. to go home with Lewis.

The next day, Lewis filed an emergency protection from abuse petition on behalf of R.L. At an *ex parte* hearing on the petition that same day, Master Michael Horan suspended Bangura's parental rights, and awarded sole custody of R.L. to Lewis. The following week, at a Rule to Show Cause Hearing on Master Horan's order, Master Glenn Andreola awarded Lewis primary physical and legal custody of R.L.

Approximately six months later, the parties appeared for a custody hearing in Family Court. After taking testimony from the parties, Judge Matthews issued a temporary order granting Lewis primary physical custody, awarding Bangura and Lewis shared legal custody, and allowing Bangura partial custody on alternating weekends. Judge Matthews also ordered the parties to participate in the Functional Family Therapy program ("FFT Program") through the court's Juvenile Branch. To that end, court employee Leroy Witt arranged for Bangura and her family to meet with therapist Manson.

Bangura evidently attempted to attend therapy, but soon reported to Witt that Manson's behavior at the session was "inappropriate." (Third Am. Compl. ¶ 108.) In response, Witt told Bangura not to return to therapy. At that time, Bangura also spoke to Lynn Roman, the supervisor of the FFT program, about Manson's conduct.

In October 2005, Judge Matthews held a second custody hearing. At the hearing, Witt read into the record a letter from therapist Manson who stated that his sessions with Bangura had been terminated

because she was "profane, inflexible and abusive toward Mr. Lewis." (Third Am. Compl. ¶ 114.) Following the hearing, Judge Matthews denied Bangura any additional custody or visitation.

Meanwhile, Bangura filed a complaint in the police department's internal affairs unit against Sergeant Pembrook, Lieutenant Dunne, Officers Quinn and Corrigan, and Detective Brown. In November 2005, Deputy Police Commissioner Council contacted Bangura to advise her that her complaint was being dismissed. Bangura claimed that Commissioner Johnson subsequently promised that he would personally review her complaint, but, according to Bangura, never did so.

## II.

Bangura initiated this action under 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Pennsylvania against over 30 defendants, including: (1) the city of Philadelphia (the "City"); Police Commissioner Johnson, Lieutenant Dunne, Sergeant Pembrook, Detective Brown, and Deputy Police Commissioner Council (the "Police Defendants"); and (2) Stovall, Master Masciantonio, Master Horan, Master Andreola, Witt, Roman, and Joseph McGill, the Director of Case Management at Family Court (the "First Judicial District Defendants").[1] In the complaint, Bangura essentially alleged that the defendants' conduct during the above-described events violated her substantive and procedural due process rights.[2] Bangura also alleged violations of Pennsylvania law.

In January 2008, the Police Defendants and First Judicial District Defendants filed

---

1. By order entered April 1, 2008, the District Court dismissed Bangura's claims against all other defendants. Bangura does not challenge this order on appeal.

2. Bangura amended her complaint twice. For purposes of this appeal, we refer to her third amended complaint, filed October 22, 2007, as the "complaint."

a joint motion for judgment on the pleadings. By order entered May 21, 2008, 2008 WL 2132123, the District Court granted the motion and dismissed all of Bangura's federal claims against them. Specifically, the District Court found that: (1) the complaint failed to state either a substantive or procedural due process claim against the Police Defendants; (2) Bangura's claims against the First Judicial District Defendants in their official capacities were barred by the Eleventh Amendment; and (3) Bangura's claims against the First Judicial District Defendants in their individual capacities were barred under the *Rooker–Feldman* doctrine. In light of its dismissal of Bangura's federal claims, the District Court declined to exercise jurisdiction over the remaining state law claims, and dismissed those claims without prejudice to Bangura's right to raise them in state court. Bangura sought reconsideration of the District Court's order, but the court denied her request. This appeal followed.

### III.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Our review of an order granting a motion for judgment on the pleadings under Rule 12(c) is plenary. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 253 (3d Cir.2004). In reviewing an order granting a motion for judgment on the pleadings, we accept all factual allegations in the complaint as true, and we draw all reasonable inferences in the light most favorable to the plaintiff. *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir.1991) (holding that when a Rule 12(c) motion alleges plaintiff's failure to state a claim upon which relief can be granted, we analyze the motion under the same standard as a Rule 12(b)(6) motion to dismiss). A motion for judgment on the pleadings, like a motion to dismiss, will be granted if the plaintiff has not articulated enough facts to "raise a right to relief above the speculative level." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Upon review, we conclude that the District Court properly entered judgment on the pleadings against Bangura on each of her claims.

A. *Bangura's Claims Against the First Judicial District Defendants*

1. Claims Against Master Andreola, Master Masciantonio, Master Horan, Maurice Stovall, and Joseph McGill in their Official Capacities

■ Bangura first challenges the District Court's determination that Master Andreola, Master Masciantonio, Master Horan, Maurice Stovall, and Joseph McGill were entitled to Eleventh Amendment immunity because their employer, the First Judicial District of Philadelphia, is an arm of the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Bangura argues that these individuals are not arms of the state because they are represented by City attorneys. We disagree. We have specifically held that the First Judicial District, which employs these defendants, is a state entity for purposes of Eleventh Amendment immunity. *Benn v. First Judicial District of Pa.*, 426 F.3d 233, 240 (3d Cir.2005). The fact that the City may be paying for legal representation for them does not alter the Eleventh Amendment immunity analysis. *See id.* at 240–41. Therefore, the District Court correctly concluded that Bangura's claims against these defendants were barred under the Eleventh Amendment.

2. Claims against Roman and Witt in their Individual Capacities

■ Next, Bangura argues that the District Court erred in dismissing her claims

against defendants Roman and Witt in their individual capacities. In the complaint, Bangura claimed that Witt, the court employee in charge of referrals to the FFT Program, had inappropriately influenced Judge Matthews's custody decision by reading therapist Manson's letter into the record at the October 2005 hearing. Bangura also alleged that, by reading the letter in court, Witt had violated the confidentiality agreement governing her sessions with therapist Manson. Finally, Bangura claimed that both Witt and Roman (the supervisor of the FFT program), "knew or should have known that the [FFT] program was not equipped to handle therapy arising out of custodial disputes in which two parties are litigating for custody," and "knew or should have known that [therapist Manson] was not a psychiatrist or licensed therapist." (Third Am. Compl. ¶ ¶ 111–12.) The District Court determined that it lacked jurisdiction under the *Rooker–Feldman* doctrine to adjudicate these claims because they were "nothing other than a claim for damages arising from the October 3, 2005 custody order." (Dist.Ct.Op.8).

We agree with the District Court that, to the extent that Bangura was claiming that Witt improperly influenced Judge Matthews's custody decision by reading therapist Manson's letter into the October 2005 custody hearing, her complaint must be directed to that court, not this one. *See Desi's Pizza v. City of Wilkes–Barre*, 321 F.3d 411, 419 (3d Cir.2003) (instructing that, under the *Rooker–Feldman* doctrine, a party who loses in state court may not bring an action in federal court complaining of injuries caused by the state court judgment). Furthermore, to the extent that Bangura alleged that Witt and Roman were negligent for: (1) referring her to the FFT Program because an unlicensed therapist was "not equipped to handle" her family's dispute, and (2) breaching her confidentiality agreement with therapist Manson, (Third Am. Compl. ¶ ¶ 111–12, 190–93), the District Court properly dismissed this claim without prejudice to Bangura's right to assert it in a state court action.

### B. *The Police Defendants*

Next, Bangura alleges that Lieutenant Dunne, Sergeant Pembrook, Detective Brown, and Deputy Police Commissioner Council were negligent in failing to protect her right to custody of R.L. (Third Am. Compl. ¶¶ 158–62.) The District Court was not required to exercise jurisdiction over these state-law claims. *See* 28 U.S.C. § 1367.

■ Bangura further alleges that Commissioner Johnson failed to train employees of the Philadelphia Police Department how to properly handle custody order violations and child abuse allegations. (Third Am. Compl. ¶¶ 179.) In order to state a claim against Commissioner Johnson under § 1983, Bangura was required to allege facts demonstrating that the Commissioner had personal involvement in the allegedly deficient training. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988) (explaining that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior"). Because Bangura failed to allege any such facts, this claim was properly dismissed.

Bangura also attempted to make out a municipal liability claim under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), on this failure-to-train theory. Specifically, Bangura alleged that the City "failed to train the employees of the Philadelphia Police Department named in this complaint to handle allegations of child abuse

in accordance with Pennsylvania state law and the release of minor children when a custody order exists." (Third Am. Compl. ¶ 177.) Bangura further alleged that "it is the custom and practice of the Police Department to inappropriately handle custody order violations." (Third Am. Compl. ¶ 178.)

■ These allegations are not sufficient to state a § 1983 claim against the City of Philadelphia. Although a municipality may be liable under § 1983 for establishing a policy or custom that results in a constitutional violation, *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018, Bangura did not allege any facts to support an inference that the City of Philadelphia follows a deficient policy with respect to child custody disputes; she did not identify the City's policy on child custody disputes, or set forth any other facts that would suggest an absence thereof. To the contrary, Bangura's complaint contains merely conclusory and speculative accusations.

### IV.

Accordingly, we will affirm the District Court's order.[3]

---

**3.** In her brief, Bangura does not appear to challenge the District Court's June 3, 2008 order denying her motion for reconsideration. Nonetheless, we have reviewed the District Court's order, and, for the reasons stated by the District Court therein, conclude that the motion was properly denied.